DON LUNSFORD V. CITY OF BRYAN ET AL.

No. A-6007. Decided January 9, 1957.
(297 S.W. 2d Series 115).

*Mullinax & Wells* and *Charles J. Morris,* all of Dallas, for petitioner.

The Court of Civil Appeals erred in holding that the trial court properly submitted to the jury the question of whether plaintiff was a member of the fire fighting union at the time of his dismissal; in holding that defendant's liability was based upon such membership and that the reason for plaintiff's discharge was because of such membership. Sheet Metal Workers Local v. Walker, 236 S.W. 2d 683, error refused; Construction & Gen. Labor Union v. Stephenson, 148 Texas 434, 225 S.W. 2d 958; National Labor Relations Board v. Bradford Dyeing Ass'n. 310 U.S. 318, 60 Sup. Ct. 918, 84 L. Ed. 1226.

*Baker, Botts, Andrews & Shepherd, Hugh M. Patterson* and *Everett A. Lowe, Jr.* all of Houston, *John M. Lawrence III* and *W. S. Barron,* both of Bryan, for respondent.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

The petitioner, Don Lunsford, brought this suit against the City of Bryan, its City Manager, and its Fire Chief for a writ of mandamus compelling his reinstatement as a member of the fire department of the City, and for damages sustained by him on account of his alleged unlawful discharge therefrom. Relief was denied him by the trial court, and the case was affirmed by the Court of Civil Appeals. 292 S.W. 2d 852.

The case calls for a construction of Article 5154c, Sec. 4, and Article 5207a, Sec. 2, Vernon's Texas Civil Statutes, which read as follows:

"Article 5154c, Sec. 4. It is declared to be the public policy of the State of Texas that no person shall be denied public employment by reason of membership or nonmembership in a labor organization."

"Article 5207a, Sec. 2. No person shall be denied employment on account of membership or nonmembership in a labor union."

Petitioner alleged that his discharge was in violation of those statutes.

The public policy of this State was reaffirmed by an Act of the 54th Legislature, 1955, Chapter 387, Vernon's Texas Civil Statutes, Article 5154g, in this language:

"Article 5154g, Section 1. It is hereby declared to be the public policy of the State of Texas that the right of persons to work shall not be denied or abridged on account of membership or nonmembership in any labor union or labor organization and that in the exercise of such rights all persons shall be free from threats, force, intimidation or coercion."

That act became effective after this suit arose and will, therefore, be given no further notice.

The case was submitted on special issues. In answer to Special Issue No. 1 the jury found that petitioner was not a member of International Association of Fire Fighters on the day of his discharge. In accordance with the court's instructions it returned no answer to the special issue inquiring whether petitioner's discharge was because of membership in that Association. It was the view of the courts below that the statutes above quoted have application only when the person who is denied employment or further employment is an actual member of the union on the day of the denial, and that there was evidence supporting the finding that petitioner was not a member on that day.

In making a statement of the case we shall endeavor to omit all references to facts bearing upon the reasons for the discharge; that is a disputed issue which has not been decided by the jury, and which will be decided upon a remand of the case. The sole question before us at this time is whether the jury should have been permitted to answer the issue submitting the question of whether petitioner was discharged by reason of or on account of membership in the union above named.

Petitioner was discharged about 7:00 o'clock on the morning of July 13, 1955. The City Manager testified that he believed that petitioner was a member of the union when he discharged him. For several days prior thereto there had been much activity among members of the fire department. They were considering the advisability of applying for membership in the above-named union. On July 8, Jack Bostick, Vice President of the Union, arrived in Bryan to confer with members of the fire department, and requested permission of the Fire Chief to hold a meeting with the members at the fire station. The request was denied, but on the following morning he met with a group of the firemen at the local carpenter's hall, at which time an application for a charter from the union was signed by some of the firemen, petitioner's name appearing first on the list. At a later meeting petitioner was elected temporary secretary-treasurer of the group. Other names were added to the application, and on July 10 the application, together with petitioner's personal check payable to the union for charter fees and dues, was turned over to Bostick. The application was accepted by the Association at Washington, and its certificate of affiliation was issued to petitioner and other signers of the application on July 13; the day petitioner was discharged. Admittedly, petitioner's membership in the union had not been fully consummated at the time he was discharged, and if the statutes relate alone to fully consummated membership, then the discharge was lawful irrespective of the reasons therefor. We first consider whether the word "membership," as used in the statutes, should be construed to mean only fully consummated membership at the exact time of the discharge, or should be given a more liberal construction so as to make the statutes applicable under the facts before us.

■ Numerous decisions by this court have established the rule that courts are not bound by the literal meaning of words in the construction of statutes, but when the intent and purpose of the Legislature is manifest from a consideration of a statute as a whole, words will be restricted or enlarged in order to give the statute the meaning which was intended by the lawmakers. State v. Standard Oil Co., 130 Texas 313, 107 S.W. 2d 550; Miers v. Brouse, 153 Texas 511, 271 S.W. 2d 419. The statutes under review are known as "right-to-work" statutes. In considering them the first inquiry which naturally arises is: What right did the Legislature intend to protect? It seems clear that it is the right of membership in a union as well as the right of nonmembership. The intent seems obvious to protect employees in the exercise of the right of free choice of joining

or not joining a union. The purpose of the statute is to afford equal opportunity to work to both classes of employees. That purpose would be thwarted if an employer could discharge without good cause an employee when he learns that the employee is in the act of consummating membership in a labor union. It is our view that, having paid his union charter fee, signed an application for membership, and been elected to a temporary local office in a group seeking a charter in the union, petitioner satisfied the membership requirements of the statutes. National Labor Relations Board v. Bradford Dyeing Association, 310 U.S. 318, 60 Sup. Ct. 918, 84 L. Ed. 1226.

■ The same result is reached when we consider the phrases "by reason of" and "on account of," as used in the statutes. The City Manager testified that he believed that petitioner was a member of the union when he discharged him. If that belief was the reason for the discharge, as claimed by petitioner but denied by respondents, then the discharge was prohibited by the statutes. Suppose the City Manager had said to petitioner that he wanted no member of a labor union on the pay rolls of the City and that he was discharging him because he believed that he was a member of the fire fighters union, would it not be a very narrow construction of the statute to hold that it afforded no protection to the employee in that situation? In our view so to hold would violate the spirit and purpose of the statute. The reason in the mind of the employer, and not the exact status of the employee, should govern.

The judgments of the trial court and Court of Civil Appeals are both reversed, and the case is remanded to the trial court.

Associate Justice Norvell not sitting.

Opinion delivered January 9, 1957.