**BRIDGESTONE/FIRESTONE, INC., f/k/a the Firestone Tire and Rubber Company, Petitioner,**

v.

**Marilyn GLYN–JONES, David Glyn–Jones, Deceased, and Jason Glyn–Jones, Respondents.**

No. D–4097.

Supreme Court of Texas.

Argued Feb. 15, 1994.

Decided June 15, 1994.

C. Vernon Hartline, Jr., Scott G. Edwards and P. Michael Jung, Dallas, for petitioner.

Barry S. Berger, Houston, for respondents.

GAMMAGE, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and HIGHTOWER, DOGGETT, CORNYN and SPECTOR, Justices, join.

In this case we consider whether Texas Revised Civil Statute article 6701d, section 107C(j) precludes a plaintiff's cause of action against a manufacturer for injuries caused by a defective seat belt and shoulder harness system. We hold the provision, which prohibits evidence of the use or nonuse of a seat belt in a civil trial, was not intended to and does not apply to protect a seat belt manufacturer from liability for defective restraint systems.

Marilyn Glyn–Jones was injured when her 1982 Ford Escort was struck by another car. Upon impact, Glyn–Jones alleges her seat belt failed to protect her and, as a result, she was thrown about her vehicle, causing further injury. Glyn–Jones sued the other driver, John Hamilton, and the City of Dallas for negligence. In addition, Glyn–Jones sued Ford Motor Company, Bridgestone/Firestone, Inc. and Champion Motor Sales, asserting both breach of warranty and products liability claims. Specifically, Glyn–Jones alleged the seat belt and shoulder harness system, as well as the driver's seat and seat track, were designed and/or manufactured in a defective condition.

Bridgestone/Firestone moved for summary judgment, contending that Glyn–Jones would be unable to prove at trial an essential element of her products liability claim.[1] The trial court agreed that, because Glyn–Jones could not introduce evidence that she was in fact wearing her seat belt at the time of the collision, Glyn–Jones would be unable to prove causation. *See* TEX.REV.CIV.STAT. ART. 6701d, § 107C(j). The trial court, consequently, granted a take nothing judgment in favor of Bridgestone/Firestone and severed the judgment from all other claims. The court of appeals reversed the summary judgment and remanded to the trial court, holding the statute unconstitutionally restricts Glyn–Jones' common-law claim in violation of the Open Courts Provision. 857 S.W.2d 640; *see* TEX.REV.CIV.STAT. ART. 6701d, § 107C(j); TEX. CONST. ART. I, § 13.

We must initially determine whether section 107C(j) actually precludes Glyn–Jones from offering evidence that she used her seat belt in this case. Because we conclude that the legislature did not intend to bar use of such evidence, we need not reach the posed constitutional question. We affirm the judgment of the court of appeals and remand to the trial court for further proceedings.

The general rule is that when a statute is clear and unambiguous "a court should not use rules of construction or extrinsic aids to construe it, but should give the statute its common meaning." *One 1985 Chevrolet v. State*, 852 S.W.2d 932, 935 (Tex.1993), *citing Cail v. Service Motors, Inc.*, 660 S.W.2d 814, 815 (Tex.1983); *Ex parte Roloff*, 510 S.W.2d 913, 915 (Tex.1974). Here, however, we are not presented with the statute as a whole, but a mere provision of the statute. Words in a vacuum mean nothing. Only in the context of the remainder of the statute can the true meaning of a single provision be made clear. *Cf. Merchants Fast Motor Lines, Inc. v. Railroad Comm'n*, 573 S.W.2d 502, 505 (Tex.1978); *Barr v. Bernhard*, 562 S.W.2d 844, 849 (Tex.1978). While the context normally provides clarity, however, here it creates ambiguity about the legislature's purpose. Because our primary task is to give effect to the legislature's intent, we must look behind the words in this case to even determine the *true* purpose of the provision. TEX.GOV'T CODE ANN. § 312.005; *see Prudential Health Care Plan, Inc. v. Comm'r of Ins.*, 626 S.W.2d 822, 827 (Tex.App.—Austin

---

1. The trial court earlier granted Bridgestone/Firestone's motion for partial summary judgment on Glyn–Jones' breach of warranty claims.

1981, writ ref'd n.r.e.), *citing Edwards v. Morton,* 92 Tex. 152, 46 S.W. 792 (1898).

Article 6701d, section 107C was enacted to mandate the use of seat belts and to provide a criminal penalty for the failure to wear a seat belt. The last sentence of the section states that "[u]se or nonuse of a safety belt is not admissible evidence in a civil trial." Tex. Rev.Civ.Stat. art. 6701d, § 107C(j). Bridgestone/Firestone contends this sentence was intended to abolish crashworthiness actions against manufacturers of seat belts. If the legislature did so intend, it seems unlikely that it would utilize a subsection of a traffic statute to effect such a change. Instead, read in the context of the entire statute, we hold that the legislature did not intend section 107C(j) to preclude evidence necessary to a cause of action against a seat belt manufacturer for injuries allegedly caused by a defective seat belt.

█ Although the bare words of subsection (j), viewed in isolation, facially appear to advance Bridgestone/Firestone's argument, we decline to foster an interpretation so obviously contrary to the legislature's intent. As the court stated in *Lunsford v. City of Bryan,* 156 Tex. 520, 297 S.W.2d 115, 117 (1957):

> Numerous decisions by this court have established the rule that courts are not bound by the literal meaning of words in the construction of statutes, but when the intent and purpose of the Legislature is manifest from a consideration of a statute as a whole, words will be restricted or enlarged in order to give the statute the meaning which was intended by the lawmakers.

*See, e.g., Miers v. Brouse,* 153 Tex. 511, 271 S.W.2d 419 (1954); *Prudential,* 626 S.W.2d at 827; *Board of Ins. Comm'rs v. Sproles Motor Freight Lines, Inc.,* 94 S.W.2d 769, 775 (Tex.Civ.App.—Fort Worth 1936, writ ref'd); *see also* Tex.Gov't Code Ann. § 312.005.

Subsection (j) was included in section 107C in order to make clear that the sole legal sanction for the failure to wear a seat belt is the criminal penalty provided by the statute and that the failure could not be used against the injured person in a civil trial. By including subsection (j), the legislature intended not to forge new ground in tort law, but merely to preserve the status quo. *Debate on Tex.S.B. 500 on the Floor of the House,* 69th Leg. (May 15, 1985); *see also* Nancy Casbeer, *The Use of the Seat Belt Defense in Crashworthiness Cases,* 40 Baylor L.Rev. 551, 564–65 (1988).

When the provision was enacted, a defendant was not permitted to introduce evidence of a plaintiff's failure to wear a seat belt as evidence of contributory negligence. *Kerby v. Abilene Christian College,* 503 S.W.2d 526 (Tex.1973); *Carnation Co. v. Wong,* 516 S.W.2d 116 (Tex.1974). In *Carnation,* we held that plaintiffs "should not have the damages awarded to them reduced or mitigated because of their failure to wear available seat belts." 516 S.W.2d at 117. By enacting a statute mandating the use of a seat belt, however, the legislature could have overruled our decision in *Kerby* and *Carnation* and established a basis for a negligence per se defense whenever a plaintiff failed to wear a seat belt. Instead, the legislature added subsection (j) to ratify *Carnation*'s holding. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 633 (Tex.1986).

The legislature did not, by adding subsection (j), seek to preclude plaintiffs from bringing claims against seat belt manufacturers for injuries caused by defective seat belts. We find no case, either in this state or in states with similar laws, where the interpretation urged by Bridgestone/Firestone was even argued, much less adopted.[2] Every scholarly article we find discussing the various mandatory seat belt laws around the country focuses on the effect such laws have on the "seat belt defense," never even contemplating the application argued for by Bridgestone/Firestone. *See, e.g.,* Nancy Casbeer, *The Use of the Seat Belt Defense in Crashworthiness Cases,* 40 Baylor L.Rev. 551 (1988); Leonard Charles Schwartz, *The Seat Belt Defense and Mandatory Seat Belt Usage: Law, Ethics, and Economics,* 24 Idaho

---

2. Other states with provisions similar to section 107C(j) include: Montana Code Ann. § 61–13–106; Oklahoma Stat.Ann. tit. 47, § 12–420; and Minnesota Stat.Ann. § 169.685, subd. 4.

L.Rev. 275 (1988); Robert F. Cochran, Jr., *New Seat Belt Defense Issues: The Impact of Air Bags and Mandatory Seat Belt Use Statutes on the Seat Belt Defense, and the Basis of Damage Reduction Under the Seat Belt Defense,* 73 Minn.L.Rev. 1369 (1989); David A. Westenberg, *Buckle Up or Pay: The Emerging Safety Belt Defense,* 20 Suffolk U.L.Rev. 867 (1986).

The trial court erred in applying Texas Revised Civil Statute article 6701d, section 107C(j) to the facts of this case. We hold that evidence of Glyn–Jones' use of the seat belt is admissible in this civil case and that summary judgment against Glyn–Jones was improperly granted. Consequently, without reaching the constitutional question, we affirm the court of appeals' decision reversing summary judgment and remand the cause to the trial court for further proceedings.

HECHT, Justice, concurring.

The dissenting opinion uses established principles of statutory construction to prove, very convincingly I think, that TEX.REV.CIV. STAT.ANN. art. 6701d, § 107C(j), means exactly what it says: "Use or nonuse of a safety belt is not admissible in a civil trial." One effect of these simple words is to preclude an action against the manufacturer of a safety belt *for* damages resulting from a defect in the belt which kept it from restraining the occupant of a vehicle properly. While I believe that the logic of the dissenting opinion points to this conclusion, I agree with the Court that the Legislature cannot reasonably be thought to have intended this result. As the Court observes, that the Legislature would absolve seat belt manufacturers from products liability claims in a subsection of a traffic statute is simply too much to believe.

Thus I concur in the result reached by the Court. I cannot, however, join its opinion. The Court attempts to justify its conclusion using the rule of construction that language must be construed in its context. The rule, though sound, is useless in this case, for there is nothing in § 107C, or even in article 6701d, that makes subsection (j) ambiguous. Section 107C(j) should be read in context, but doing so does not help. The pretense that somehow it does is, in my view, as incredible as the conclusion demanded by the logic of the dissenting opinion. The real principle at work here is this: in some circumstances, words, no matter how plain, will not be construed to cause a result the Legislature almost certainly could not have intended. *See Cramer v. Sheppard,* 140 Tex. 271, 167 S.W.2d 147, 155 (1942).

ENOCH, Justice, dissenting, joined by GONZALEZ, Justice.

Texas Revised Civil Statute article 6701d, section 107C(j) provides that "[u]se or nonuse of a safety belt is not admissible evidence in a civil trial." Today, the Court acknowledges that the legislature actually said "[u]se or nonuse of a safety belt is not admissible in a civil trial," but concludes that the legislature did not really mean to say "[u]se or nonuse of a safety belt is not admissible in a civil trial." Rather, the Court holds that the legislature really meant to say that only *nonuse* of a safety belt is not admissible in a civil trial. I respectfully dissent.

The Court announces that "[a]lthough the bare words of subsection (j), viewed in isolation, facially appear to advance Bridgestone/Firestone's argument, we decline to foster an interpretation so obviously contrary to the legislature's intent." 878 S.W.2d at 134. The Court then declares that "[s]ubsection (j) was included in section 107C in order to make clear that the sole legal sanction for the failure to wear a seat belt is the criminal penalty provided by the statute and that the failure could not be used against the injured person in a civil trial." This reasoning is devoid of support for neither section 107C(j), nor section 107C(j) read in context with section 107C, even remotely suggests this conclusion. In determining to avoid a result it considers unacceptable, the Court abandons long established rules of statutory construction and simply rewrites the legislation.

"If language in a statute is unambiguous, this court must seek the intent of the legislature as found in the plain and common meaning of the words and terms used." *Sorokolit v. Rhodes,* ____ S.W.2d ____, ____ (Tex.1994); *See also, Cail v. Service Motors, Inc.,* 660 S.W.2d 814, 815 (Tex.1983) (citations omitted)

("[i]f the disputed statute is clear and unambiguous[,] extrinsic aids and rules of statutory construction are inappropriate, and the statute should be given its common everyday meaning"); *Monsanto Co. v. Cornerstones Municipal Util. Dist.*, 865 S.W.2d 937, 939 (Tex.1993); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 352 (Tex.1990); *Republic-Bank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex.1985). Today, the Court ignores the plain and common meaning of the language used in section 107C(j) and concludes that "use or nonuse of a safety belt" really means only "nonuse of a safety belt."

The Court attempts to justify its revision of the statute with exalted phrases such as "[w]ords in a vacuum mean nothing," and "[o]nly in the context of the remainder of the statute can the true meaning of a single provision be made clear." 878 S.W.2d at 133. But understandably, the Court provides absolutely no principled explanation of how section 107C(j), when read in the context of the mandatory seat belt law created by section 107C, was intended to preclude only evidence of nonuse of seat belts in a civil trial. 878 S.W.2d at 134. Section 107C provides civil penalties for persons who fail to use a seat belt while operating or riding in the front seat of a passenger car. Further, subsection (i) of section 107C directs the State Department of Highways and Public Transportation to "develop and implement an educational program to encourage the wearing of safety belts." Subsection (j), of course, provides that the use or nonuse of a seat belt is not admissible evidence in a civil trial. Upon what basis does this Court conclude that the preclusion of evidence of use of a seat belt is "so obviously contrary to the legislature's intent" when read in the context of section 107C? 878 S.W.2d at 134. The Court does not explain because there is no principled explanation.

In addition, there is no logical basis for the Court's conclusion that "[s]ubsection (j) was included in section 107C in order to make clear that the sole legal sanction for the failure to wear a seat belt is the criminal penalty provided by the statute and that the failure could not be used against the injured person in a civil trial." 878 S.W.2d at 134. Because there is no logical basis for the Court's conclusion, it is not surprising that the Court does not even attempt to provide a logical basis.

Further, the Court's approach in this case is in absolute contradiction to the approach it took in *Smith v. Sewell*, 858 S.W.2d 350 (Tex.1993). In the *Smith* case, we addressed section 2.02 of the Alcoholic Beverage Code which establishes a cause of action against providers of alcohol under certain limited circumstances:

(b) Providing, selling, or serving an alcoholic beverage may be made the basis of a statutory cause of action under this chapter ... upon proof that:

(1) at the time the provision occurred it was apparent to the provider that the individual being sold, served, or provided with an alcoholic beverage was obviously intoxicated to the extent that he presented a clear danger *to himself and others* ....

Tex.Alco.Bev.Code § 2.02 (emphasis added). Sewell became intoxicated at a bar owned by Smith and was severely injured on his way home in a one-car accident. We recognized that, historically, an individual who voluntarily became intoxicated was precluded from suing a tavern owner for his own injuries. 858 S.W.2d at 352. However, we concluded that the plain language of Chapter 2 provided a cause of action for an intoxicated party. *Id.* at 355.

Finally, the Court supports its decision with the statement that if the legislature did intend to preclude evidence of use of seat belts, "it seems unlikely that it would utilize a subsection of a traffic statute to effect such a change." 878 S.W.2d at 134. A troubling aspect of this reasoning is that much of the penal law in this state would disappear under today's expressed rationale. If courts are free to rewrite legislation simply because they think the legislature should have placed the statute somewhere else within the statutory framework, many laws would be subject to judicial revision. *See E.g.* Tex.Health & Safety Code Ann. § 481.079 (Vernon 1992) (criminalizing possession and distribution of certain drugs although criminal conduct customarily defined in Penal Code).

It is obvious that the Court simply does not agree with the result created by section 107C(j) as it is written. However, as we stated in *Simmons v. Arnim,* 110 Tex. 309, 220 S.W. 66 (1920):

> Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language, and not elsewhere.... They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.

*See also RepublicBank Dallas, N.A. v. Interkal, Inc.,* 691 S.W.2d 605, 607 (Tex.1985); *Taylor v. Firemen's and Policemen's Civil Service Comm'n of the City of Lubbock,* 616 S.W.2d 187, 189 (Tex.1981).

I recognize that it is reasonable for the Court to view the result of section 107C(j) as written to be unexpected, and I agree that the legislature may not have intended to abolish claims against seat belt manufacturers for injuries caused by defective seat belts. However, unless application of a legislative enactment produces an absurd result, I do not agree that we should simply rewrite a provision in order to achieve what we perceive to be the true intent of the legislature. At one time the majority of this Court was in accord. Not only did the majority hold so in *Smith, supra,* but later we were unanimous in *Rodriguez v. Rodriguez,* 860 S.W.2d 414 (Tex.1993). There, we applied the statutory guidelines for calculating child support as written even though the result was arguably inconsistent with the overriding intent of the legislation. Within two weeks of the issuance of that opinion, the legislature changed the statutory language to achieve its intended result. *See* 73d Leg., R.S., ch. 766, § 9, 1993 Tex.Gen.Laws 2989.

Here too, the legislature could, as I have no doubt they would, change this statute. I note that numerous states have mandatory seat belt legislation and only three use language concerning the admissibility of evidence as broad-sweeping as section 107C(j). *See* MINN.STAT. § 169.685(4); OKLA.STAT. tit. 47, § 12–420; MONT.CODE ANN. § 61–13–106.[1] It would not be difficult for the legislature to amend the statute to merely preserve the *status quo* regarding the consequences of safety belt use or nonuse, and thus preserve a cause of action for crashworthiness and prohibit the seat belt defense. For example, Hawaii's statute provides:

> This section shall not be deemed to change existing laws, rules, or procedures pertaining to a trial of a civil action for damages for personal injuries or death sustained in a motor vehicle accident.

HAW.REV.STAT. § 291–11.6(d). Further, if the legislature chooses to abolish only the seat belt defense, it could draft a statute similar to that used in Kansas:

> Evidence of failure of any person to use a safety belt shall not be admissible in any action for the purpose of determining any aspect of comparative negligence or mitigation of damages.

KAN.STAT.ANN. § 8–2504(c). *See also* ME. REV.STAT.ANN. tit. 29, § 1368–A. Other states have created "crashworthiness exceptions" to their safety belt preclusion statutes. *See, e.g.,* MD.TRANSP.CODE § 22–412.3(h)(3)(i).

It is the Texas legislature's prerogative to choose any of the above described options, or none at all—certainly it has not chosen any thus far. Section 107C(j) is clear and unambiguous. We have no authority to rewrite it.

Accordingly, the Court also errs in failing to address the validity of the statute under the Open Courts Provision.

---

**1.** None of these states have addressed the issue presented by this case.